UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID JOSUE ORNELAS/ ORNELAS JOSUE (https://www.facebook.com/profile.php?id=100038425011670 THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | Case No. 1:19-mj-275 |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Brandon Dennis, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure, and made in support of 18 U.S.C. §§ 2703 (a), 2703 (b)(1)(a), 2703 (c)(1)(a) for a search warrant for information associated with certain Facebook User ID's that are stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to search and seize is described in the following paragraphs and is more particularly described in Attachment A and Attachment B, incorporated herein.

2. I am a duly sworn Special Agent (SA) of the United States Drug Enforcement Administration (DEA) and have been assigned as such since 2018. In that capacity, I am authorized to apply for a warrant under Rule 41 of the Federal Rules of Criminal Procedure.

3. I am currently assigned to the Bismarck (POD) and have been since April 2018. My current duty assignment includes, but is not limited to, investigating complex drug

conspiracies and organizations and individuals involved in the possession of and trafficking in controlled substances. Prior to my current assignment with the DEA, I was employed as a Detective and Patrolman for the Nicholasville Police Department in Nicholasville, Kentucky for a period of six years. Through my training, education, and experience, I have become familiar with the manner in which persons involved in the trafficking of controlled substances and their methods of operation and attempts to avoid detection from law enforcement. I am authorized and have the responsibility to investigate and arrest persons for violations of federal law, involving the unlawful distribution of drugs, (21 U.S.C. § 841(a)(1)), attempt and conspiracy to commit the same (21 U.S.C. § 846), money laundering (18 U.S.C. § 1956 and 1957), and illegal possession of firearms (18 U.S.C. § 922 and 18 U.S.C. § 924(c)(1)).

4. During my tenure with DEA and in local law enforcement, I have participated in numerous investigations involving violations of federal narcotics laws. I have attended schools and have been instructed in many aspects of narcotics investigations and am familiar with the narcotic laws promulgated under Title 21 of the United States Code and had classes on federal money laundering laws promulgated under Title 18 of the United States Code. I am aware of the following information from numerous sources, including but not limited to my own personal observations and participation in this investigation and my review and analysis of oral and written reports. I have initiated and/or participated in surveillance, the operation and debriefing of numerous drug dealers, drug users, and informants, performed both physical and electronic surveillance, and executed search warrants. Further, I have analyzed records documenting the purchase and distribution of illegal drugs, and the concealment of illegal narcotics profits.

5. I know, based on my knowledge, training, experience, and participation in other investigations, and consultations with other experienced investigators including DEA Special

Agent Jeff Buckles, that drug traffickers commonly use social media (Facebook, Snapchat, Instagram, etc) to aid them in their drug trafficking activities, and conceal conversations from their cellular telephones.

6.     This Affidavit is based on my personal knowledge and involvement in the investigation, and from information I have received from other persons involved in the investigation, including but not limited to Mandan Hidatsa Arikara (MHA) Division of Drug Enforcement Supervisory Special Agent Chad Coulter, and Homeland Security Investigations (HSI) Special Agent Derek Davis.

7.     The information contained in this Affidavit is not a complete account of everything known to me about this case. Rather, it contains the facts that I believe are sufficient to support a finding of probable cause to support the requested search warrant.

## PROBABLE CAUSE

8.     Your Affiant has assisted MHA Division of Drug Enforcement and HSI- Minot with the investigation into the ORNELAS Drug Trafficking Organization (DTO) operating out of Las Vegas, Nevada to North Dakota since March of 2019. The ORNELAS DTO is a polydrug distributing DTO.

9.     On July 29, 2019, your Affiant assisted MHA Supervisory Special Agent Chad Coulter, HSI Special Agent Derek Davis, and FBI TFO Al Bohle with an interview of a Confidential Source (CS). The interview took place at the Bismarck Police Department. The purpose of the interview was to discuss the CS's connection to the ORNELAS DTO, operated by Jose Ulises ORNELAS and Joshua ORNELAS, aka "Jose".

10.    The CS stated that he/she was introduced to the ORNELAS DTO through a friend toward the end of summer in 2018. The CS described the DTO as Hispanic males, who travel on

airplanes and are from California and Nevada. The CS stated that he/she then started receiving methamphetamine from the ORNELAS DTO, or "Josh" and "Jorge". Your Affiant knows through the joint investigation with MHA DDE and HSI-Minot that "Josh" and "Jorge" are Joshua ORNELAS and Jose Ulises ORNELAS.

11.     During the interview, SA Coulter asked the CS to guess the total amount of methamphetamine he/she received from Josh and Jorge or the ORNELAS DTO, and the CS stated ten (10) to fifteen (15) pounds.

12.     The CS stated that the ORNELAS DTO change their cellphone numbers twice a week, and the CS has been communicating with the DTO on the Facebook.com account listed at JOSUE ORNELAS. HSI Davis then took a video of the messenger conversation between the CS and the Facebook.com account of JOSUE ORNELAS.

13.     The CS stated that he/she owes the ORNELAS DTO $2,000 to $3,000 dollars for methamphetamine he/she has received from the ORNELAS DTO. The CS stated that he/she discussed the drug debt on Facebook.com messenger with the ORNELAS DTO on July 28, 2019. The CS described the ORNELAS DTO as greedy.

14.     On August 14, 2019, MHA SA Coulter spoke with CS via text messages. The CS relayed multiple text messages to SA Coulter regarding the ORNELAS DTO asking for payment of drug money from the CS, which is owed to the ORNELAS DTO. The conversation between the CS and the ORNELAS DTO took place on the Facebook.com messenger account listed as JOSUE ORNELAS.

15.     On August 15, 2019, FBI TFO Bohle met with the CS in Dickinson, North Dakota. The CS provided TFO Bohle his communication with the user of the JOSUE ORNELAS Facebook messenger account between the dates of July 30, 2019 and August 14, 2019. TFO

Bohle observed Facebook messenger messages regarding the continued discussion of payment of drug money to the ORNELAS DTO from the CS.

16. This Court has authorized a number of GPS related, and residential search warrants in regards to the ORNELAS DTO. On August 16, 2019, this Court authorized criminal complaints for federal arrest warrants for Jose Ulises ORNELAS and Joshua ORNELAS aka "Jose", for Possession with intent to distribute controlled substances, 21 USC 841 (a)(1) & 841(b)(1)(c), and 18 USC 2, in the District of North Dakota.

17. Your Affiant is aware that a user of Facebook.com can change the profile name at any time, but will keep the same profile link or URL. It appears that the operator of the Facebook.com URL/profile link- https:www.facebook.com/profile.php?id=100038425011670 has changed user names from JOSUE ORNELAS to ORNELAS JOSUE during the course of Your Affiant's investigation into the ORNELAS DTO, while keeping the same URL/profile link and Facebook profile picture the same. See attached photographs in Attachment A.

18. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://facebook.com. Facebook allows it users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes the general public.

19. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process of thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

20. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group of network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, birthdays, and etc.

21. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook

22. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about there whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user

and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

23. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been delated, as well as all photos and videos uploaded by any user that have that user tagged in them.

24. Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item ion the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history of the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

25. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

26. Facebook has a "like" feature that allows users to give positive feedback or connection to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (i.e., non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

27. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

28. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

29. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

30. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about the user's access of use of that application may appear on the user's profile page.

31. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

32. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may

communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

33.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicious. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used tor controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logos the Internet Protocol (IP) addresses from which users accesses their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts

and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (E.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

34. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribes and their use of Facebook, such as account access information, transaction information, and other account information.

## REQUEST FOR SEALING

35. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation and not all of the targets of this investigation will be searched at this time. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

## CONCLUSION

36      I submit that this Affidavit supports probable cause for a search warrant authorizing the examination of the Facebook account described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Special Agent Brandon Dennis
Drug Enforcement Administration
Bismarck POD

Subscribed and sworn to before me
on August 20, 2019:

UNITED STATES MAGISTRATE JUDGE
Hon. Clare R. Hochhalter
United States Magistrate Judge
District of North Dakota